UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-60511-CIV-COHN/Seltzer

JACOBO SZNAPSTAJLER,

    Plaintiff,

v.

LABORATORY CORPORATION
OF AMERICA,

    Defendant.
_____/

## ORDER GRANTING IN PART MOTION FOR SUMMARY JUDGMENT

THIS CAUSE is before the Court upon Defendant Laboratory Corporation of America's Motion for Summary Judgment [DE 26].  The Court has carefully considered the motion, Plaintiff's Opposition [DE 41], and Defendant's Reply [DE 50], and is otherwise fully advised in the premises.  The motion became ripe on January 8, 2009.

### I.  BACKGROUND

Plaintiff Jacobo Sznapstajler ("Plaintiff") filed this action for employment discrimination against his former employer, Defendant Laboratory Corporation of America ("Labcorp" or "Defendant").  Plaintiff was terminated from his position as Regional Manager of Business Development ("RMBD") for the South Florida region on or about June 22, 2007.  Plaintiff brings claims for age, national origin and religious discrimination pursuant to the Florida Civil Rights Act ("FCRA"), retaliation under the FCRA, and breach of contract related to his compensation.  Defendant removed the case to this Court based upon diversity jurisdiction, as Plaintiff's annual salary was at

or about $104,815.36.

Plaintiff was hired by Labcorp in 2004 at the age of 48, holding the RMBD position at the time of his termination.  Labcorp is in the business of medical diagnostic testing.  Plaintiff supervised four to six Senior Marketing Executives ("SME's") in the South Florida region who were responsible for identifying and bringing in new health care provider business as well as retaining the business of existing clients.

Sometime in late 2006 or early 2007, Plaintiff co-founded an unincorporated business entity known as "The Realtors to the Stars."  Four of the five individuals in this business entity were Labcorp employees in the Florida Division.   Besides Plaintiff, employee Melissa Butterworth's position was Hospital Director for the Florida Division, a high ranking sales management position.  Kelly Balester and Jed Walter were non-management sales persons who reported directly to Ms. Butterworth.  Both Plaintiff and Ms. Butterworth reported to Terry Farrell, Vice President of Sales.

The Realtors to the Stars maintained a website, which touted the real estate experience of the five individuals involved, though none of the Labcorp employees actually had such experience.  See Exhibit E to Farrell Deposition [DE 26-3].  The website stated that the real estate agents are able to "make a full-time commitment" to the customer.  Upon discovering the website in June of 2007, Terry Farrell informed his superiors and senior executives at Labcorp's corporate office.[1]

---

[1] Plaintiff maintains that his prior manager, Robert Polage, encouraged Plaintiff and his fellow sales representatives to obtain real estate licenses and allegedly gave permission for the website, an assertion disputed by Defendant because Mr. Polage left Labcorp in July 2005, a full year before Plaintiff's website was created.  See Exhibit A to Reply Memorandum, consisting of receipt for creation of website from July 14, 2006.

Farrell, his superior, Robert Nelson, Senior Vice President of the Florida Division, and higher corporate executives located at Labcorp's corporate headquarters were all concerned over the various conflicts of interest inherent in the real estate venture among Plaintiff, Ms. Butterworth and her sales employees.  Farrell called the number on the website listed for Plaintiff during Labcorp's business hours and Plaintiff answered himself, reinforcing Labcorp's impression of the website's representation of a "full-time commitment" to selling real estate.  Nelson and the higher corporate executives believed participation in the real estate venture and website constituted several violations of Labcorp's Code of Business Conduct & Ethics, including creating a public impression that Labcorp employees were committed to selling real estate "full-time," rather than servicing Labcorp's clients; managers being in business with subordinate employees; and the potential for loss of morale among employees if they knew higher compensated sales managers were not fully committed to Labcorp's success.  Farrell received permission from Nelson to investigate and discipline Plaintiff, Butterworth, Balester and Walter, up to and including termination.

Farrell, along with Kate Sumsion, Divisional Human Resources Director for Florida, separately interviewed Plaintiff and the other three Labcorp employees.  Plaintiff contends that a decision to terminate Plaintiff had already been made because Plaintiff had been instructed the evening prior to the meeting to bring his company laptop and all Labcorp property to the meeting with Farrell in Tampa.  Farrell contends

---

Thus, there is no genuine dispute of fact that neither Polage nor Labcorp could have approved the contents of the website.

that at the interview Plaintiff was unapologetic, defended his website because he was just selling his own property, and did not seem to take Labcorp's conflict of interest concerns seriously.  Plaintiff contends that the interview and the investigation were a sham, in that he was not asked how much time he actually spent on the realty company, if he only did the work on off-duty hours, and whether he received permission from his prior supervisor to do such realty work.  Plaintiff further contends that other Labcorp employees had second jobs.

After the interviews with Farrell and Sumsion, Plaintiff and Melissa Butterworth were terminated for violating Labcorp's conflict of interest code, while the non-management employees involved in the real estate website were given written reprimands.  Plaintiff contends that Farrell terminated him because Plaintiff was older than 40, of Cuban heritage, Jewish, and/or because Plaintiff complained that he was singled out for sales quota increases.   Plaintiff presents evidence that Farrell made derogatory statements about Hispanics and Jews, as well as older workers.[2]  Labcorp asserts Plaintiff was terminated for conflict of interest violations, including making a public impression he was committed to selling real estate "full-time," being in business with lower ranking Labcorp employees, and not being fully committed to his Labcorp clients.  After a period of discovery, Labcorp moved for summary judgment.

---

[2] With regard to age-based animus, Farrell told Plaintiff that we "need to hire young talent," which Plaintiff believed meant younger, good looking women.  Plaintiff's deposition at pp. 46-47 [DE 29-2].  Farrell also commented that he preferred if Plaintiff did not hire sales reps who were close to retirement age.  Id. at 45, 53.

4

## II. DISCUSSION

### A.  Summary Judgment Standard

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. Id. at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  According to the plain language of Fed. R. Civ. P. 56(e), the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).  "A mere 'scintilla' of

evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." Anderson, 477 U.S. at 249-50.

### B.  Disparate Treatment Discrimination

Defendant argues that this case must be analyzed as a disparate treatment in discipline case, whereas Plaintiff asserts that a less onerous prima facie case is appropriate on the age claim because Plaintiff was replaced by someone under the age of 40.[3] The Court determines that this case is more appropriately analyzed using the prima facie case for disparate treatment in discipline because others were disciplined for the same conduct at the same time as Plaintiff.[4]

On his claims for age, national origin and religious discrimination under the

---

[3] See e.g. Zaben v. Air Products & Chemicals, Inc., 129 F.3d 1453, 1457 (11th Cir. 1997).

[4] Plaintiff contends that he did not violate the conflict of interest policy by participating in the realtor website. Though Labcorp's policy is not definitive on what outside activities are prohibited, because Labcorp has established as undisputed fact that its upper management (above Terry Farrell) believed the policy was violated, the Court's role is not to substitute its judgment for the business decision to delegate termination authority to Farrell. Similarly, Plaintiff's assertions that Farrell's investigation was incomplete fails as well. Farrell confirmed Plaintiff's day-time participation in the real estate venture by telephoning the website and reaching Plaintiff. While Farrell could have conducted more extensive interviews of the participants, failure to do so does not give rise to a material issue of disputed fact regarding Plaintiff's prima facie case.

FCRA, Plaintiff bears the burden of proving that one of these prohibited bases was the determining factor in the discrimination, and must establish a prima facie case of discrimination.[5]  This may be done by presenting circumstantial evidence via the McDonnell Douglas test,[6] which allows a party to introduce circumstantial evidence that raises a rebuttable presumption of intentional discrimination.  Myra Walker v. Nationsbank of Florida, 53 F.3d 1548, 1555-56 (11th Cir. 1995);  Carter v. City of Miami, 870 F.2d 578, 581 (11th Cir. 1989).  In the usual case, direct evidence is not present and the plaintiff must rely on circumstantial evidence.  Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir.1997).  Applying the McDonnell Douglas framework to the ADEA, a plaintiff establishes a prima facie case of age discrimination by showing the following: (1) he was a member of a protected group, that is, at least 40 years of age or of Cuban heritage or Jewish; (2) he was subject to an adverse employment action; (3) his employer treated similarly situated employees outside the protected groups more favorably; and (4) he was qualified to do the job.  Holifield, 115 F.3d at 1562; see also McDonnell Douglas, 411 U.S. at 802;  Jones v. Bessemer Carraway Med. Ctr., 137 F.3d 1306, 1310 (11th Cir.1998).  "Demonstrating a prima facie case is not onerous; it

---

[5]  Claims for age, national origin and religious discrimination under the FCRA are treated under the same legal standard as federal Title VII and ADEA claims.  The Florida courts have held that decisions construing Title VII are applicable when considering claims under the Florida Civil Rights Act, because the Florida act was patterned after Title VII.  Harper v. Blockbuster Entertainment Corporation, 139 F.3d 1385, 1387 (11th Cir. 1998) (citing Ranger Ins. Co. v. Bal Harbour Club, Inc., 549 So.2d 1005, 1009 (Fla.1989); Florida State Univ. v. Sondel, 685 So.2d 923, 925 n. 1 (Fla. 1st Dist.Ct.App.1996); Kelly v. K.D. Construction of Fla., Inc., 866 F.Supp. 1406, 1411 (S.D.Fla.1994)).

[6]  McDonnell Douglas v. Green, 411 U.S. 792 (1973).

requires only that the plaintiff establish facts adequate to permit an inference of discrimination." Holifield, 115 F.3d at 1562 (citations omitted).

If a prima facie case is shown, the defendant must "articulate some legitimate, nondiscriminatory reason for the [adverse employment action]." Jones v. Bessemer Carraway Med. Ctr., 137 F.3d 1306, 1311 (11th Cir.1998). If this is done, then the plaintiff may attempt to show that the proffered reason was merely a pretext for the defendant's acts. Id. at 1311; see also Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff, though the Supreme Court has held that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves v. Sanderson Plumbing Products, Inc., 120 S.Ct. 2097, 2109 (2000). Following Reeves, the Eleventh Circuit Court of Appeals held that "if the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim." Chapman v. Al Transport, 229 F.3d 1012, 1024-25 (11th Cir. 2000).

### C.  Prima Facie Case

Defendant asserts that Plaintiff cannot meet the third element of a prima facie case because he was treated the same as an under 40, non-Cuban, non-Jewish woman, Melissa Butterworth, who was the same rank as Plaintiff, committed the same

conduct at the same time and received the same adverse action of termination. Plaintiff argues that the other two Labcorp employees involved in the real estate venture, Kelly Balester and Jed Walter, were not terminated, and therefore he was treated worse than these non-Cuban and non-Jewish employees.

In Burke-Fowler v. Orange County, Fla., 447 F.3d 1319, 1323 (11th Cir. 2006), the Eleventh Circuit stated:

> to determine whether employees are similarly situated, we evaluate "whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Maniccia v. Brown,* 171 F.3d 1364, 1368 (11th Cir.1999) (citations and quotation marks omitted). When making that determination, "[w]e require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges."

In this case, the Court has an unusual circumstance, an exactly identical comparator's misconduct, plus two other employees with nearly identical conduct but a lower level in the company. Labcorp contends that its decision to terminate the two managers involved in the real estate venture, Plaintiff and Melissa Butterworth, while only reprimanding the sales staff involved, was reasonable. The Court agrees. Because Ms. Butterworth, who is outside of Plaintiff's protected classes (age, national origin, religion), received the same discipline at the same time for the same offense, Plaintiff cannot meet his prima facie case.[7]

---

[7] This Court reaches this conclusion despite Plaintiff's argument that the two sales persons who received less discipline are outside his protected classes. The sales persons are not nearly identical to Plaintiff in that they are not managers.

### D.  Retaliation

To establish a prima facie case for retaliation, Plaintiff must show that: 1) he engaged in protected activity; 2) Labcorp was aware of that activity; 3) he suffered an adverse employment action; and 4) there was a causal link between his protected activity and the adverse employment action. Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999).  "To recover for retaliation, the plaintiff 'need not prove the underlying claim of discrimination which led to [her] protest;' however, the plaintiff must have had a reasonable good faith belief that the discrimination existed." Holifield, 115 F.3d at 1566 (quoting Tipton v. Canadian Imperial Bank of Commerce, 872 F.2d 1491, 1494 (11th Cir.1989)).  "To meet the causal link requirement, the plaintiff 'merely has to prove that the protected activity and the negative employment action are not completely unrelated.'" Holifield, 115 F.3d at 1566 (quoting E.E.O.C. v. Reichhold Chemicals, Inc., 988 F.2d 1564, 1571-72 (11th Cir.1993)).  However, "[t]he plaintiff must at least establish that the employer was actually aware of the protected expression at the time the employer took adverse employment action against the plaintiff." Holifield, 115 F.3d at 1566 (citing Goldsmith v. City of Atmore, 996 F.2d 1155, 1163 (11th Cir.1993); Weaver v. Casa Gallardo, Inc., 922 F.2d 1515, 1524 (11th Cir.1991)).

As with the discrimination claims described above, once the plaintiff establishes his prima facie case, the employer must proffer a legitimate, non-discriminatory reason for the adverse employment action. Holifield, 115 F.3d at 1566 (citing E.E.O.C. v. Reichhold Chemicals, Inc., 988 F.2d 1564, 1571-72 (11th Cir.1993)).  If the employer offers legitimate reasons for the employment action, the

plaintiff must then demonstrate that the employer's proffered explanation is a pretext for retaliation.  Holifield, 115 F.3d at 1566 (citing Meeks, 15 F.3d at 1021; Goldsmith, 996 F.2d at 1163).  A "plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."  Reeves, 120 S.Ct. at  2109.

      Plaintiff alleges that he complained of discrimination in an email to Farrell on June 20, 2007.  However, the email in question never mentions any form of discrimination, other than Plaintiff complaining about corporate headquarters' increase to his region's sales quota as compared to the rest of the regions in the Florida division.  Plaintiff's deposition at 61, 67-69.  The email in question is not protected activity under Title VII or the FCRA as it makes no mention of any basis for a discrimination claim.  Fusaro v. Hialeah Housing Authority, 33 F.Supp.2d 1354, 1362 (S.D.Fla. 1999).   Plaintiff cannot make a prima facie case as he did not engage in protected activity.[8]

### E.  Contract Claims

      Plaintiff claims that Defendant failed to pay him for his Jump Start bonus for the first and second quarters of 2007, and his quarterly bonus for the second quarter of

---

[8] As with the discrimination claims, Labcorp's non-discriminatory basis was Plaintiff's violation of the conflict of interest code due to his participation in the real estate venture with subordinates.  As evidence of pretext, Plaintiff alleges that Terry Farrell made various derogatory statements about Hispanics, Jews and older workers.  Even if Plaintiff had met his limited burden to show a prima facie case, the Court concludes that any stray comments from Terry Farrell do not rise to the level of pretext, as they were unrelated to the discipline decision regarding the realtor website.  Truss v. Harvey, 179 Fed. Appx. 583, 588 (11th Cir. 2006), citing Saulsberry v. St. Mary's Univ. of Minn., 318 F.3d 862, 867-68 (8th Cir. 2003).

2007.  A breach of contract claim requires a valid contract, a material breach and damages.  Abbott Lab., Inc. v. Gen. Elec. Capital, 765 So.2d 737, 740 (Fla.Dist.Ct.App. 2000).  Plaintiff was terminated in late June of 2007.  Defendant asserts that under the "Operation UCH Jump Start 2007 Incentive Program," an RMBD such as Plaintiff must be employed by Labcorp at the time the contest winnings were distributed.  Labcorp sets forth by declaration that this bonus was not paid until late July, 2007, and therefore Plaintiff was not eligible by the plain meaning of the "contract."  Declaration of Kenneth Younts, ¶ 11 [DE 26-11].  Plaintiff asserts that Defendant's practice of paying quarterly bonuses at the end of each quarter means Plaintiff should have been paid in April for meeting the Jump Start goals for the first quarter.  Plaintiff argues that the parties' course of dealing must influence Defendant's unreasonable interpretation and delay in not paying the Jump Start bonus for the first quarter until late July.  Plaintiff has raised a genuine issue of material fact regarding the timing of the payment of the first quarter Jump Start bonus.[9]

As for the regular quarterly dividend, Plaintiff was paid a first quarter dividend, but argues that because he was terminated eight (8) days prior to the end of the second quarter, Defendant has breached the implied covenant of good faith by not paying Plaintiff for whatever he had earned as a bonus up to that date.  The Court

---

[9] Plaintiff's opposition memorandum does not appear to be making a claim for the Jump Start bonus for the second quarter.  Even if he is pursuing such a claim, it is clear that Plaintiff was not employed through the end of the second quarter.  Thus, the Jump Start Program language stating that Plaintiff must be employed when bonuses were paid would defeat even a course of dealing of paying the bonus a few weeks after the end of a quarter.

disagrees. In this context, Plaintiff was not still employed by Labcorp at the end of the bonus tracking period, let alone when the bonus was normally paid. Thus, no course of dealing can be applied under these facts. Moreover, as the Court has not found a genuine issue of material fact regarding whether the termination was a result of discrimination, it cannot find that Labcorp breached any covenant of good faith and fair dealing, as it had a legitimate non-discriminatory reason for the termination.

### III. CONCLUSION

The Court grants summary judgment to Labcorp on all claims except the claim for approximately $20,000 for the first quarter Jump Start incentive program.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant Laboratory Corporation of America's Motion for Summary Judgment [DE 26] is hereby **GRANTED in part**, as explained above;

2. The Court will separately enter a partial summary judgment on the Claims in Counts I, II, III, and IV in favor of Defendant;

3. The only issue remaining for trial is whether a course of dealing in paying bonuses existed so as to make the Jump Start first quarter bonus payable in April of 2007.

**DONE AND ORDERED** in chambers in Fort Lauderdale, Broward County, Florida, this 20th day of January, 2009.

/s/ James I. Cohn
JAMES I. COHN
United States District Judge

Copies to:
Ware Cornell, Esq.
Thomas H. Loffredo, Esq.
John Mann, Esq.