UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-60511-CIV-COHN/Seltzer

JACOBO SZNAPSTAJLER,

    Plaintiff,

v.

LABORATORY CORPORATION
OF AMERICA,

    Defendant.
_____/

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

THIS CAUSE came before the Court for nonjury trial on January 29, 2009.  The parties filed post-trial Proposed Findings of Fact and Conclusions of Law on February 12, 2009 [DE's 69 and 70].  The Court has considered the testimony at trial and is otherwise fully advised in the premises.

Plaintiff Jacobo Sznapstajler ("Plaintiff") filed this action for employment discrimination and breach of contract against his former employer, Defendant Laboratory Corporation of America ("Labcorp" or "Defendant").  Plaintiff brought claims for age, national origin and religious discrimination pursuant to the Florida Civil Rights Act ("FCRA"), retaliation under the FCRA, and breach of contract related to his compensation.  On January 20, 2009, this Court granted summary judgment to Defendant on all claims except part of the breach of contract claim regarding the alleged failure of Defendant to pay Plaintiff a certain bonus.  The parties agreed to waive a jury trial on this claim.  Accordingly, pursuant to the requirements of Rule 52 of

the Federal Rules of Civil Procedure, the Court issues the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT[1]

1. Plaintiff began employment with Labcorp in February of 2004. Shortly thereafter he was designated Regional Manager of Business Development ("RMBD") for the South Florida region.

2. Labcorp. is in the business of providing medical testing to medical providers, such as doctors, clinics and hospitals.

3. RMBD's were paid a quarterly bonus, which Plaintiff testified was usually paid two and one-half to three months after the quarter ended.

4. Quarterly bonuses were paid based upon meeting a performance goal.

5. The 2005 RMBD Plan stated that bonuses were paid 45 to 90 days after end of tracking period.

6. The 2006 RMBD Plan stated that bonuses were paid 75-90 days after end of tracking period.

7. The tracking period is usually one quarter of the year, or three months.

8. Plaintiff's bonus was based upon the sales of the Senior Marketing Executives that Plaintiff managed.

9. Plaintiff was terminated on June 22, 2007.

---

[1] Any of the foregoing factual findings that may represent conclusions of law are adopted as conclusions of law.

10. Plaintiff received his first quarter bonus of approximately $30,000 on June 22, 2007, the day he was terminated

11. Plaintiff did not receive any further payment from Labcorp.

12. The amount Plaintiff believes he is entitled to under the Jump Start program is $20,000, though the parties later stipulated at trial that the amount is in fact $28,200.

13. Plaintiff testified that bonuses from other contests, such as the Jump Start Program at issue in this bench trial, were typically paid at the same time as the regular bonuses.

14. Other such contests included the LipoScience NMR contest which ran from March to August of 2006, Defendant's Exhibit 1 (Bates 000012), and a pap smear contest.

15. Sometimes the contests were based upon the sales volume by number of specimens or tests completed and sometimes based upon sales volume in dollars.

16. The UHC Jump Start Program was the only variable compensation bonus program that had a component for RMBD's during the time Plaintiff was employed at Labcorp which was administered by the National Sales Administration department.

17. Labcorp's Florida Division ran their own bonus programs, such as those mentioned in ¶ 14, *supra*.  Defendant's Exhibit 1.

18. The Jump Start Program at issue in this case specifically stated that its tracking period ran from January through April, not March as believed by the Plaintiff. Plaintiff's Exhibit 1.

19. This particular tracking period was selected because of the beginning of Labcorp's new contract with United Health Care in January of 2007.

20. The extra month of April in the Jump Start Program allowed SME's to have more incentive to have new sales efforts and more time for the processing of approvals for the new business to be completed.

21. The Jump Start program did not state that its bonus would be paid at the same time as the regular quarterly bonus.  P. Ex. 1.

22. Kevin Younts, Vice President of National Sales Administration, testified that eight individuals qualified for an award under the UHC Jump Start program.

23. Plaintiff would have been eligible to receive a Jump Start bonus of $28,200, the highest award of the RMBD's in Florida (the award was based upon a percentage of sales during the tracking period) had he been employed at time of payment.

24. Sales information is generally available for use in bonus calculation seven weeks after the end of a tracking period.

25. The data for the Jump Start Program bonus was available in the third week of June, but calculations by the National Sales staff took two weeks because the sales data is manually entered into a spreadsheet in Excel.

26. Labcorp has numerous computer/financial systems due to various acquisitions of other companies and it takes staff time to enter sales data into a centralized database.

27. This data entry work for the Jump Start Program is "extra" work for the National Sales Administration department as it is not part of the regular quarterly bonus program.

28. Younts wrote the qualifications for receipt of a bonus from the UHC Jump Start Program, including that the employee must be employed at the time of payment of the bonus.

29. The present employee requirement for payment of the Jump Start bonus was an incentive to employee retention.

30. The sales incentive system interacts with the payroll processing system once a month, usually around 10th or 12th of month, which is when bonuses are paid.

31. The regular quarterly bonus does not require employees to be employed at the time of payment of a bonus.

32. The UCH Jump Start program did not contain language requiring bonus payments to be made within 75 to 90 days after the end of a tracking period.

33. This language was left out because the Jump Start program is extra work for the National Sales Administration department and Younts did not want to overwork his staff in rushing to complete this extra work.

34. The Jump Start bonus figures became final on July 6, 2007, and was available for payment on July 10 or 12, when the sales incentive system interacted with the payroll processing system.

35. Younts did not know Plaintiff had been terminated on June 22, 2007.

36. Plaintiff did not receive a Jump Start bonus because he was not employed by Labcorp at the time this bonus was paid.

## CONCLUSIONS OF LAW[2]

The issue to be decided in this bench trial is whether a course of dealing in paying bonuses existed so as to make the Jump Start first quarter bonus payable to Plaintiff despite his termination on June 22, 2007.  The plain meaning of the parties' contract is the best evidence of the parties' intent.  Rose v. M/V Gulf Stream Falcon, 186 F.3d 1345, 1350 (11th Cir. 1999) (interpreting Florida law).  In this case, the language of the UHC Jump Start Program is not ambiguous in its requirement that Plaintiff be employed at the time of payment of the bonus.

A written agreement may be modified by the subsequent conduct or course of dealing of the parties.  Rhodes v. BLP Associates, Inc., 944 So.2d 527, 530 (Fla. Dist. Ct. App. 2006).  However, "a party cannot modify a contract unilaterally. All the parties whose rights or responsibilities the modification affects must consent." St. Joe Corp. v. McIver,  875 So.2d 375, 382 (Fla. 2004).

---

[2] Any of the foregoing conclusions of law that may represent factual findings are adopted as factual findings.

It is clear from the record that Plaintiff has failed to prove a course of dealing that could modify the written terms of the Jump Start Program.  The Jump Start Program was clearly separate and distinct from the regular quarterly bonus period.  Thus, the fact that the regular quarterly bonus was paid as usual in late June does not apply to the Jump Start Program.  Moreover, the Jump Start Program involved a tracking period that extended through April.  Thus, even if the same time lag was used before payment was made, payments were not due until early July.  As this bonus program was above and beyond the regular bonus program, Plaintiff had no vested right to receive payment after his termination.

In his proposed findings of fact [DE 69], Plaintiff interjects a new legal theory that because Labcorp involuntarily terminated Plaintiff, the retention provisions in the Jump Start program are inapplicable and should not be enforced.  Plaintiff asserts that Labcorp made Plaintiff's performance "impossible" under the contract.  In addition, Plaintiff cites to Florida law for the proposition that Labcorp cannot keep the benefit of Plaintiff's labor (in overseeing salespersons who sold more lab tests under the Jump Start program) without paying his earned bonus.

None of these new legal theories are properly before the Court.  However, the Court has considered and rejects these theories under the facts of the case.  As the Court has previously found no discriminatory basis for his termination, Labcorp can terminate Plaintiff for any reason.  The record reveals that he was not terminated in order to prevent payment of the Jump Start bonus.  As to the "wages kept" theory mentioned at ¶¶ 18-20 of Plaintiff's Proposed Findings, the money at issue is not

wages, nor a regular bonus, but a special bonus program over and above Plaintiff's salary and regular quarterly bonus.  The Court finds no violation of Florida law under the facts of this case.

## CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that a separate Final Judgment in favor of Defendant will be entered herein consistent with the Court's Findings of Fact and Conclusions of Law.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 19th day of February, 2009.

_____
JAMES I. COHN
United States District Judge

Copies furnished to:

Ware Cornell, Esq.
Thomas H. Loffredo, Esq.
John Mann, Esq.